ANDREW C. ELLIOTT, Appellant, v. ROSS W. WOOD and others, Respondents.

The right of parties to agree upon the terms of a power of sale of mortgaged premises given to the mortgagee is clear, and courts have never assumed to control this right in the absence of fraud or some statutory regulation upon the subject. Parties may, in such cases, contract for private sale, and even without notice. ALLEN, J.

The statutes of this State regulating the foreclosure of mortgages by advertisement do not apply to mortgages upon real estate situated out of the State.

Where the plaintiff and others, claiming to own a guano island in the Carribean sea, contracted to sell to the defendants one-half of their interest in the island for $30,000, the defendants to furnish $20,000 more as a working capital, and to have the sole control and management of the business of mining and selling the guano; and afterward the plaintiff, being indebted to the defendants, gave a mortgage of his interest in the island to them, which contained a power of sale, and by its terms permitted them to purchase at such sale, and this mortgage was subsequently foreclosed, in the manner provided therein, but not in accordance with our statutes, the defendants bidding in the property,—*Held*.

that the sale was valid, and that the plaintiff was thereby barred of all interest in the premises.

(Argued February 7, 1871; decided February 28th, 1871.)

APPEAL from an order of the General Term of the Supreme Court, in the first judicial district, reversing a judgment of the Special Term for the plaintiff, and granting new trial.

In June, 1857, the plaintiff, with others, claimed to own and to have taken possession of "Sombrero," an island in the Caribbean sea, containing deposits of guano, and contracted to sell to Wood & Grant, to whose rights and liabilities the defendants, Woods, have succeeded, one-half of the interest in the whole island, Wood & Grant agreeing to pay $30,000 therefor, and advance for a working capital the further sum of $20,000, so much of which as might not be required, to be divided among the owners *pro rata.* The agreement contained a provision that Wood & Grant should have the sole control of the working and management of the whole, for the mutual benefit of themselves and the other owners, and that the net proceeds should be divided in the manner particularly specified. The right to sell, lease and convert into a joint stock company, or to work for mutual benefit, was vested solely in Wood & Grant.

In August of the same year a formal conveyance of the moiety of the island to Wood & Grant was executed. In November, 1860, the plaintiff, then owning an interest of one-fourth in the island, executed a conveyance to Wood & Son of that interest subject to a defeasance (executed simultaneously by the grantees), by way of mortgage, to secure the payment of all claims and demands of the mortgagees then existing, for moneys advanced by them to or for the account of the plaintiff, which then amounted to about $20,000, in which sum the plaintiff was, as stated in the defeasance, then justly indebted, and also as a further security for any future indebtedness of the plaintiff. The proceedings for a foreclosure and sale of the mortgaged interest, were prescribed by the defeasance, and subsequently modified by an agree-

ment of the parties, and it was stipulated and agreed that the mortgagees, or their legal representatives or assignees, might become the purchasers of the interest at the sale under the mortgage, and that, in that event, no further or other conveyance of said property should be necessary; and such sale, whoever should become the purchaser, should be a perpetual bar, both in law and equity, against the plaintiff, his executors, administrators and assigns. The conveyance and mortgage were subject to all the rights of the defendant, Van Vechten, under a conveyance by way of mortgage, under certain agreements of October, 1858, and February, 1859.

About the 1st of May, 1861, the defendants, Wood & Son, rendered to the plaintiff an account of their management of the enterprise, showing a balance due them of $51,217.48, for one-fourth of which they claimed to hold the plaintiff as their debtor; and about the 1st of April, 1861, they rendered the plaintiff an account against him individually, of $34,598.94, payment of which balance was demanded. Payment not being made, the defendants, Wood & Son, gave notice to the plaintiff, and gave the other notices of foreclosure and sale prescribed by the agreement of the parties, and on the 16th day of August, 1861, offered the mortgaged property and interest for sale, pursuant to the mortgage, at the Merchants' Exchange in the city of New York, and the same was struck down to the mortgagees for twenty-five dollars, they being the highest bidders therefor.

They also bought the same property at a sale under the Van Vechten mortgage, in October, 1861, for $1,200. The judge finds that the mortgage of Van Vechten was given to secure a usurious debt.

The judge, at the trial, held and decided that the sale under the mortgage to the defendants, Wood, and purchased by them, was void, and that the mortgage to Van Vechten was void for usury, and that no title passed to the defendants, Wood, as purchasers under the same; and that the sale and purchase under the same was also ineffectual and void, by reason of the trust relations of the defendants, Wood, to the

plaintiff. It was adjudged at Special Term that the plaintiff was still the owner of the one-fourth of the island, and entitled to share in the earnings and products of the enterprise, and to an accounting from the defendants, Wood, down to the time of hearing, and a reference was ordered to state the account. The General Term, on motion, and on a case and exceptions, reversed the decision of the Special Term and ordered a new trial, and from the last order the plaintiff has appealed to this court.

*D. W. Adams* and *James Clark*, for the appellant, insisted that the plaintiff's title was not divested by sale under the Wood mortgage, first because they were trustees and agents of plaintiff and could not become purchasers. (1 Will. Eq. Jur., 186–190; 1 Story Eq. Jur., §§ 322, 323; 2 Sugden on Vend. and Pur., 190; White's Lead. Eq. Cases, 72, and notes; *Davoue* v. *Fanning*, 2 J. Ch., 252; *Michaud* v. *Girod*, 4 How. U. S., 554; *Holt* v. *Holt*, 1 Chan. Cas., 190; *Whelpdale* v. *Cockson*, 1 Ves., 9; *Fox* v. *Mackreth*, 2 Bro., 400; *Ex-parte Reynolds*, 5 Ves., 707; *Ex-parte Bennett*, 10 Ves., 385; *Coles* v. *Trecothic*, 9 Ves., 246; *Stuart* v. *Kissam*, 2 Barb., 493; *Quackenbush* v. *Leonard*, 9 Paige, 334; *Slade* v. *Van Vechten*, 11 Paige, 21; *Mills* v. *Goodsell*, 5 Conn., 475; *Cnmb. Coal and Iron Co.* v. *Sherman*, 30 Barb., 553; *Robinson* v. *Smith*, 3 Paige, 222; *Butts* v. *Wood*, 37 N. Y., 317.) That being mortgagees, they could not without statutory authority become purchasers. (1 Wash. on Real Prop., 528, 529; *Jennison* v. *Hapgood*, 7 Pick., 1; *Dawes* v. *Grazebrook*, 3 Meriv., 200; *Benham* v. *Rowe.*, 2 Cal., 387; *Hyndman* v. *Hyndman*, 19 Verm., 9; *Waters* v. *Groom*, 11 Clark & F., 684; 1 Lead. Cas. in Eq., 211, note; *Hoyt* v. *Martense*, 2 Smith, 231; *Shee* v. *Manhattan Co.*, 1 Paige, 48; *Dobson* v. *Barry*, 4 Seld., 216; 2 Story Eq., § 1019; Crabb's Law of Real Prop., § 2262; 4 Kent's Comm., 158; Coote on Mort., 11; *Henry* v. *Davis*, 7 Johns. Ch., 40; *Lawrence* v. *Farmers' Loan and Trust Co.*, 3 Ker., 200; *Pease* v. *Benson*, 28 Maine, 336.)

*Stephen P. Nash*, for the respondent, insisted that the sale under the Wood mortgage was valid. (*Olcott* v. *The Tioga R. R. Co.*, 40 Barb., 179; 27 N. Y., 546; *Frost* v. *Koon*, 30 N. Y. R., 428; Lindley on Partp., 761.)

ALLEN, J. Wood & Grant, to whose rights, duties and obligations the defendants, Wood & Son, have succeeded, paying $30,000 in cash for their interest, furnishing the working capital for the development of the enterprise, and mining, collecting and sending to market the products of the island, and coming under positive engagement to advance $20,000 for that purpose, were properly accorded the sole control of the working management of the island as a reasonable security for the repayment of their advances. They had also the power to transfer or lease the property to a joint stock company, or work the same for the mutual benefit of the persons in interest. They did not lease or sell, but worked the same, retaining the control and management under the agreement. This agency or trust, by whatever name it is called, imposed a duty upon the agents to exercise the utmost good faith toward every other party in interest.

In the conduct and management of the business, they occupied a confidential relation to their associates in the enterprise, and were under obligations to labor for the benefit of all, and could not avail themselves of their position to secure any special or exclusive benefit or advantage to themselves.

In the management of the agency or trust, Wood & Son would not be permitted to do anything inconsistent with the interests of the business, or which would interfere with their duty, and in dealing with the others, whether they are regarded as principals, or as the beneficiaries of a trust, they would be held to the most entire good faith.

These principles are elementary, and apply to all persons standing in a confidential relation to others, as trustee, agent, partner, or otherwise.

There is no complaint, in this action, of malfeasance by Wood & Son, in the management of the business committed to their care, or in any of the expenditures connected with the enterprise, or the profits resulting from it.

This action was not brought in respect to such manage ment, or for an accounting in respect to it, except as such account may result from the establishment of the plaintiff's claim as owner of the property, notwithstanding the mortgage sale.

The several parties in interest retained their property in the island in severalty, and each was competent to deal with the other in respect to it. Wood & Son were competent to contract for the purchase or sale of interests therein, with the plaintiffs or either of the other associates. They were in no sense the trustees or agents of the plaintiff in regard to his separate property rights, nor had they any power over the same, except as they might put the whole property into a joint stock company. But if a more intimate and enlarged trust relation existed between the parties, that relation might have been laid aside and a new contract made with the beneficiary, provided no undue advantage had been taken of the position. (*Ex parte Lacey*, 6 Vesey, 626; *Coles* v. *Trecothick*, 9 Vesey, 234.)

The conveyance by Elliott to Wood & Son, by way of mortgage, is not impeached by the evidence, or by the judgment. On the contrary, the same is established as a valid security.

Wood & Son offered to prove upon the trial the existence of the indebtedness, and the amount, and the correctness of the accounts rendered, showing nearly $60,000 due from the plaintiff at the time of the foreclosure of the mortgage. This was excluded upon the objection of the plaintiff.

The evidence of the plaintiff shows very clearly that, at all times, he had full knowledge of the business and its results, being for a part of the time a superintendent of the works at the island, and making most of the sales of the guano. The title of Wood & Son under their mortgage was

adjudged invalid, upon the sole ground that, being mortgagees, they could not become purchasers at their own sale. Personal notice of the time and place of the sale was given to the plaintiff; the other notices required by the terms of the power of sale were also published and given, and the plaintiff, by his counsel, attended and objected to the sale. It is not objected that the sale was not in all respects fairly conducted, or that the property did not bring its full value.

It is not sought to avoid the sale for irregularity, unfairness, inadequacy of price, or because the conditions of the power were not complied with.

It is not denied that the parties were competent to contract, the one to give and the other to take, the mortgage, and the consideration of the mortgage is not disputed.

The power of sale was a part of the security, and its terms, so far as consistent with law, were matters of conventional arrangement between the parties.

The mortgage was not of real property within the State, and therefore the power of sale, and proceedings under it, were not regulated by the statutes of this State regulating the foreclosure of mortgages by advertisement. (2 R. S., 545.) That statute relates solely to mortgages of property within the State.

The mode of transmitting or transferring title to real property in the Caribbean sea, is not within the scope of the legislation of New York, neither can the courts of this State, except as they may exercise jurisdiction over persons, by any judgment or decree, affect the title to property without the limits of the State. *Lawrence* v. *The Farmers' Loan and Trust Company* (3 Kern, 200), decided that the statute directed the manner in which property should be sold under a power of sale contained in a mortgage, and must be followed, but the sale was of lands within the State, under a power recorded as required in the county within which the lands were situated, and under a mortgage which permitted a full compliance with the statute.

It was not intimated that, but for the statute, the parties might not have made their own contract ; on the contrary, it is expressly said that the power of sale is the proper subject of stipulation, and notice of the sale may be waived by agreement of the parties.   (Per GARDINER, Ch. J., citing Coote on Mortgage, 124–128.)   There was in the case before us a propriety, if not a necessity for stipulating the means and process for a foreclosure of the equity of redemption.   The property mortgaged was out of the jurisdiction of the courts of the State, if not out of the jurisdiction of all civil courts, and the mortgagor might not be within the jurisdiction of any court of competent jurisdiction, when default should be made in the payment of the mortgage debt.   The right of parties to regulate the terms of a power of sale of mortgaged premises by the mortgagee by stipulation, is clearly recognized, and courts have never assumed to control this right, or to make new contracts for the parties, in the absence of fraud or some statutory regulation upon the subject.   Parties may contract for a private sale and without notice.   (*Lawrence* v. *Farmers' L. and T. Co.*, *supra* ; *Davy* v. *Durant*, 1 De Gex and Jones, Chan., 535 ; *Montague* v. *Dawes*, 12 Allen, 397).

In *Davy* v. *Durant*, the mortgagee, under a power to sell either by public auction or private sale, sold by private contract and agreed that a part of the purchase money might remain on mortgage, and it was held a good execution of the power; and in *Montague* v. *Dawes*, a purchase by the assignee of the mortgage, was held regular because "the power of sale in express terms authorized the mortgagee or his assigns, to become the purchaser at the auction sale under it." In *Downes* v. *Grazebrook* (3 Mer., 200), Lord ELDON clearly intimates that with the express authority of a *cestui qui* trust, a trustee may become the purchaser of the trust property.

But a mortgagee is not solely a trustee for the mortgagor, he is a creditor having interests to protect and has rights which a naked trustee may not have. *Waters* v. *Grower* (11 Cl. & Fin., 684).   If it be conceded that a mortgagee with

power of sale, being a trustee for sale, cannot either directly or indirectly, except by the express authority of the mortgagor, purchase the mortgaged estate, still he may do so, when such authority is conferred either by the terms of the power or in any other way.

In this State to avoid all question, express authority is given by statute to mortgagees, to become the purchasers at sales made by themselves or by their direction under a power of sale on the mortgage, although the power itself may not confer this authority; and in judicial sales under decrees and judgments of the courts the creditor plaintiffs, for whose benefit the sales are made, are permitted to purchase. Acts authorized by statute and permitted by judicial decrees, cannot be regarded as inconsistent with the obligations and rights of the parties interested, or as intrinsically wrong or impolitic, but must be deemed *prima facie* fair and honest.

Parties may stipulate in cases without the operation, but within the principle of the statute, for that which the statute expressly allows. In the absence of statute authority or the express assent of the mortgage debtor, bids in behalf of the creditor by the auctioneer making the sale, have been sustained in the absence of any evidence of unfairness.

In *Richard* v. *Holmes* (18 How. U. S. R., 143), Judge Curtis says, " We have no doubt the creditor, for the satisfaction of whose debt the sale was made, had a right to compete fairly at the sale ; but whether he had or not, his doing so could not be injurious to the complainants."

We are not called upon to go to this extent in the present case, but the decision is referred to as indicating the tendency of judicial decisions.

Powers of sale are construed liberally for the purpose of effecting the general object, and neither the interest of the mortgagee or mortgagor will be advanced by forbidding purchases by the mortgagee. The security of the mortgagee would be less valuable and the mortgagor would lose the benefit of the competition of the mortgagee upon the sale.

There is less danger of oppression and abuse of the creditor in agreeing upon the conditions of the security and the power of sale at the time of giving the mortgage, when the mortgagor is free to act as his interests and judgment prompt, than after the relation of mortgagee and mortgagor has been created and the debt becoming due, the latter is in a greater or less degree in the power and at the mercy of his creditor. In *Dobson* v. *Racey* (4 Seld., 216), a permission to the mortgagee to acquire the title to the mortgaged property without a sale, given by the mortgagor after the making of the mortgage and under which the mortgagee had acted, and acquired the title by means of a conveyance through a third party was held valid and effectual to foreclose the equity of redemption. The power of sale here was in all its terms legal and valid, and such as the parties were competent to agree upon and was faithfully and fairly executed after personal notice to the mortgagor, and the sale effectually foreclosed the equity of redemption of the plaintiff. This conclusion renders it unnecessary to consider the question made upon the title derived under and through the Van Vechten mortgage.

The sale under the Wood mortgage barred the claim of the plaintiff upon the property and its proceeds, and the judgment should be affirmed with costs.

All the judges concurring.

Judgment affirmed.