THE FARMERS' LOAN AND TRUST COMPANY, Respond-
ent, *v.* THE BANKERS AND MERCHANTS' TELEGRAPH
COMPANY and Others, Appellants.

*Mortgage—power of parties to provide for the manner in which the mortgaged premises
shall be sold — as to property in this State — as to property in other States — this
court cannot direct the sale of property in another State — construction of a
provision giving to the mortgagee a right to elect that the principal shall become
due on default of the mortgagor.*

On July 2, 1883, the Bankers and Merchants' Telegraph Company of New York,
the Bankers and Merchants' Telegraph Company of New Jersey, the Bankers
and Merchants' Telegraph Company of Pennsylvania and the Bankers and
Merchants' Telegraph Company of Baltimore city made a mortgage to the
plaintiff, whereby they mortgaged all their property, situate in several States,
to secure bonds, to the amount of $300,000, issued by the said Bankers and
Merchants' Telegraph Company. The bonds provided that in the event of
non-payment of any interest coupons thereto attached, if such default should
continue for six months after maturity and demand of payment, the principal
of the bond should become due in the manner provided in the said mortgage.
The mortgage provided that if default be made in the payment of any of the bonds
or of any of the coupons, or in the payment of an annual installment of
$10,000 of principal therein provided for, and such default should continue
for six months, it should be lawful for the mortgagee, and upon the written
request of one-third in interest of the owners and holders of said bonds it
should be its duty, to enter upon the property mortgaged and sell and dispose
of the same at public aution, having given notice once a week for six suc-
cessive weeks by publication in two newspapers in the city of New York, one
in Philadelphia and one in Baltimore, of the time and place of any such sale,
and as the attorneys of the said corporations, by the said mortgage duly author-
ized, constituted and appointed, to execute to the purchasers thereof a good and
sufficient deed of conveyance for the transfer of the real estate, and other
good and sufficient conveyance of the mortgaged property sold, and out of the
moneys arising out of such sale to pay the principal and interest due on
the bonds, rendering the overplus, if any there were, to the said Bankers and
Merchants' Telegraph Company.

It also authorized the trustee, in case of such default, to enter into and upon
and take possession of all the offices and electric lines of the mortgagors,
wheresoever situated, and their equipments and all the real and personal pro-
perty described in the mortgage, for the benefit of the holders of said bonds,
and retain and use the same until a sale should be made as therein provided
or as might be decreed by a court of competent jurisdiction and upon such
sale to grant and convey the property so sold to the purchaser thereof, freed
and discharged from all the trusts by said mortgage created, and without any

liability as to application of purchase-money, and that the recitals in any deed or conveyance of default, demand and refusal to pay, shall be as conclusive evidence as if the same had been duly, judicially declared and determined.

It also contained the following clause: "It being expressly understood and agreed that in the event of any such entry upon or taking possession of the telegraph lines, estates and property, real and personal, and premises hereby mortgaged, or agreed or intended so to be, or in the event of any sale thereof as hereinbefore mentioned, then, and in either such case, the whole principal sum of each and all of said bonds then outstanding and unpaid, and intended to be hereby secured, shall thereupon forthwith become due and payable, anything herein or therein contained to the contrary thereof notwithstanding; and it being further expressly understood and agreed that any law or usage to the contrary notwithstanding, that in case of default in the payment of either the principal or interest of the said bonds aforesaid, no sale of the telegraph lines, estates, property franchises and premises hereby mortgaged, or any of them, shall be had by reason of such default, otherwise than by and under the authority of the said trustee, for the time being, and in the manner hereinbefore provided."

The complaint in this action, brought to obtain a decree of foreclosure and a sale of the mortgaged premises alleged a default in payment of interest; that the plaintiff elected that the entire principal sum secured should immediately become due and payable; that the plaintiff had been impeded and hindered from taking possession of the property by the fact that the company had been embarrassed and receivers had been appointed by the courts of various States, and that it was impossible for it to execute its trust, in the way specified in the mortgage, without the aid of this court. The defendants admit the failure to pay, but deny the right of the plaintiff to elect that the whole principal sum should become due, and further deny that the plaintiff has been impeded in its attempt to get possession of the property or that it is impossible for it to execute the trust without the aid of the court.

*Held,* that, conceding that in the case of the property, which was situated wholly within this State and was subject to the jurisdiction of its courts, that the parties could not by their agreement deprive the courts of the jurisdiction, which they would otherwise have, to enforce rights acquired under the mortgage, it was equally true that they could by agreement provide the method for the enforcement of their rights in these cases where the property mortgaged was situated out of this State and beyond the jurisdiction of its courts, unless contrary to some statutory regulation upon the subject.

*Elliott* v. *Wood* (45 N. Y., 71) followed.

That, as the statute of this State regulating the foreclosure of mortgages by advertisement relates solely to mortgages of property situated within this State, and as no evidence was offered to show that there was any statute relating to the foreclosure of mortgages in any of the other States in which the property covered by the mortgage in question was situated, the parties to the mortgage in question had at least the right, as to the property situated in the other States, to regulate by agreement the method of its sale.

That, as this court could not by its decree or a sale made by an officer appointed by it, or by a conveyance executed by such officer, affect the title to property without the limits of the State, it erred in entering a decree directing a foreclosure sale, by a referee appointed therein, of all the property of the company situate without the limits of this State.

That the court should not direct a sale of the property situated within this State, as it had found that the property should in no case be sold or disposed of except as an entirety, and as it did not appear that it was impossible for the mortgagee to enforce its rights by a method not entailing such great disaster upon the security of the mortgage as would result from a separate sale of that portion of the mortgaged premises situated within this State.

That the bonds became immediately due and payable, only upon the happening of one of two contingencies, viz, upon the trustees taking possession of the property, or upon a sale thereof; and that as neither of the events had happened the principal was not yet due.

Appeal from a judgment of foreclosure and sale under a mortgage given to the plaintiff, as trustee.

On the 2d day of July, 1883, the Bankers and Merchants' Telegraph Company of New York, the Bankers and Merchants' Telegraph Company of New Jersey, the Bankers and Merchants' Telegraph Company of Pennsylvania, and the Bankers and Merchants' Telegraph Company of Baltimore City, made a mortgage to the Farmers' Loan and Trust Company, as trustee, whereby they mortgaged all their property situate in several States to secure an issue of $300,000 of bonds by the said Bankers and Merchants' Telegraph Company, said bonds becoming due in 1913, the proceeds of which were to be used in the payment of the debts of the said corporation and in the extension of the telegraph lines, etc., of said company. The bonds provided that in the event of non-payment of any interest coupons thereto attached, if such default should continue for six months after maturity and demand of payment, the principal of the bond should become due in the manner provided in the said mortgage.

The mortgage provided that if default was made in the payment of any of the bonds or any of the coupons which should become due thereon or should default be made in the payment of an annual installment of principal of ten thousand dollars provided for in said mortgage and such default should continue for the space of six months, it should be lawful for the said mortgagee, and upon the written request of one-third in interest of the owners and holders of said bonds it should be the duty of the said mortgagee, to enter

upon the property mortgaged and sell and dispose of the same at public auction, having given notice once a week for six successive weeks, by publication in two newspapers in the city of New York, one in Philadelphia and one in Baltimore, of the time and place of any such sale, and as the attorneys of the said corporation, by the said mortgage duly authorized, constituted and appointed, to execute to the purchasers thereof a good and sufficient deed of conveyance for the transfer of the real estate, and other good and sufficient conveyance of the other mortgaged property sold, and out of the money arising out of such sale to pay the principal and interest which then should be due or grow due on the said several bonds and the expense of sale, returning the overplus, if any there should be, to the said Bankers and Merchants' Telegraph Company.

The mortgage then contains provisions for the payment of taxes and assessments, and further provides that in case of default in the payment of the said taxes and assessments, or of the principal and interest of the bonds intended to be secured by the mortgage, it shall be lawful for the said mortgagee, and it shall be its duty so to do, upon being required in writing by one-third in interest of the holders and owners of said bonds and to enter into and upon and take possession of all of the offices and electric lines of the mortgagors, wheresoever situated, and their equipments and all the real and personal property described in said mortgage, for the benefit of the holders of said bonds, and to retain and keep possession thereof and to use and operate the same until a sale thereof as hereinbefore provided, or as may be decreed by a court of competent jurisdiction, and that upon any sale being made by the mortgagee under the mortgage it shall grant and convey the property so sold to the purchaser thereof, freed and discharged from all the trusts by said mortgage created, and without any liability as to application of purchase money, and that the recitals, in any deed or conveyance, of default, demand and refusal to pay shall be as conclusive evidence as if the same had been duly judicially declared and determined, and that said mortgagee shall appropriate the purchase-money after deductions for expenses of sale, etc, first, to the payment of interest due in full, and second, to the payment of the principal of said bonds in full, if sufficient, but if not then to pay the same *pro rata.*

The mortgage then contains the following clauses: "It being expressly understood and agreed that in the event of any such entry upon or taking possession of the telegraph lines, estates and property, real and personal, and premises hereby mortgaged or agreed or intended so to be, or in the event of any sale thereof, as hereinbefore mentioned, then, and in either such case, the whole principal sum of each and all of said bonds then outstanding and unpaid, and intended to be hereby secured, shall thereupon forthwith become due and payable, anything herein or therein contained to the contrary thereof notwithstanding. And it being further expressly understood and agreed, any law or usage to the contrary notwithstanding, that in case of default in the payment of either the principal or interest of the said bonds aforesaid, no sale of the telegraph lines, estates, property, franchises and premises hereby mortgaged, or any of them, shall be had by reason of such default, otherwise than by and under the authority of the said trustee for the time being and in the manner hereinbefore provided."

Default having been made in the payment of interest due upon said bonds, and demand having been made therefor, and six months having elapsed, the plaintiff, the trustee named in said mortgage, commenced this action to foreclose the same.

The complaint herein alleges, among other things, that because of the default in the payment of interest above mentioned for said six months, it elected that the entire principal sum secured by the said mortgage should immediately become due and payable, and that the same has, therefore, become due, and that the Telegraph company becoming embarrassed, and receivers having been appointed of its property by the courts of various States in which its property is situated, the plaintiff has, ever since the right to take possession of the mortgaged property matured, been impeded and hindered in taking possession of the premises and property covered by said mortgage, and that in consequence of the embarrassed condition of the affairs of the Telegraph company, and of the facts above mentioned, it is impossible for the plaintiff, as trustee under said mortgage, to execute its said trust in the way and manner specified and provided in and by the said mortgage without the aid of this court, and thereupon prays for a decree of foreclosure and sale of the mortgaged property.

The defendants admit, in their answer a failure to pay interest, but deny that, under said mortgage, or pursuant to the terms of any other agreement, because of such failure the plaintiff had the right to elect that the whole principal sum should become due, or that it did become due because of such election, and deny that plaintiff has been hindered or impeded in taking possession of and selling the property, as alleged, or that it is impossible for the plaintiff to execute the trust in the way provided by the mortgage without the aid of the court.   The answer further alleges that no part of the principal has become due, because no entry has been made as required by the mortgage.

After a trial of the issues raised by the pleadings, a decree was entered, which, after reciting among other things, that the property to foreclose which the action is brought extends over the State of New York and other States, and that it should in no case be sold or disposed of except as an entirety, directs a foreclosure sale of said property by a referee appointed therein, of all the property of the Telegraph company situate within the States of New York, New Jersey, Pennsylvania and Maryland, and the District of Columbia, and which decree adjudged that the purchaser of the property sold should be let into the possession and enjoyment thereof, and that every person in possession thereof should surrender such possession to the purchaser upon production of the referee's deed, and that the purchaser should be fully vested with and hold and enjoy said property.   From this decree this appeal is taken.

*Robert G. Ingersoll,* for the appellants.

*Herbert B. Turner,* for the respondent.

VAN BRUNT, P. J. :

The grounds upon which the appellants base their appeal seem to be as follows :   First. That the plaintiff has mistaken its remedy in seeking a foreclosure by action, when the mortgage explicitly provides for a foreclosure by advertisement, and explicitly excludes every other method.   Second. That the decree provides for fore_ closure for both principal and interest, whereas the principal is not yet due.

Our attention has not been called to any case or text-book, nor

have we been able to find any in which the questions involved in this controversy have been discussed or adjudicated. The rule is undoubtedly well established that the mere presence of a power of sale contained in a mortgage does not exclude other modes for foreclosure provided by law, but it is in addition to them. In the case at bar, however, the mortgage by its terms expressly prohibits any sale under the mortgage otherwise than by or *under the authority of the trustee* and in the manner therein provided, a provision which was not contained in any of the powers of sale as to which the rule above mentioned has been held to apply. In discussing this question it may be conceded that in the case of the mortgage of property which is situate wholly within this State and subject to the jurisdiction of its courts, that the parties cannot by their agreement deprive the courts of the jurisdiction which they would otherwise have to enforce rights acquired under the mortgage, but it is equally true that they may by agreement provide the method for the enforcement of their rights in those cases where the property mortgaged is situate out of this State and beyond the jurisdiction of its courts unless contrary to some statutory regulation upon the subject. (*Elliott* v. *Wood*, 45 N. Y., 71, and cases cited.)

The statute of this State regulating the foreclosure of mortgages by advertisement, relates solely to mortgages of property situated within this State, and as no evidence is offered to show that there is any statute relating to foreclosure of mortgages in any of the other States in which property covered by the mortgage in question is situate, and as were it not for our statute regulating the foreclosure of mortgages the parties to a mortgage in this State might agree to any method of sale, even without notice, (*Lawrence* v. *Farmers' Loan and Trust Co.*, 13 N. Y., 200; *Davey* v. *Durrant*, 1 De Jex & Jones, 535) which might suit their purposes, the parties to the mortgage in question had at least the right as to the property situate in other States to regulate, by agreement, the method of its sale. It seems, also, equally clear that the courts of this State cannot by its decree, or by a sale made by an officer appointed by it, or by a conveyance executed by such officer, affect the title to property without the limits of the State (*Elliott* v. *Wood*, *supra*), and, therefore, by a sale under the decree entered in this

action by the referee therein named, no title could possibly be conveyed to such of the mortgaged property as is situate in other States.

It is probably this fact that caused the insertion in the mortgage in question of the strong and apparently exclusive power of sale therein contained. It was known by the parties to the mortgage as it was found by the learned court upon the trial of this action that the property mortgaged was situate in various States; that its value depended upon its being kept together and operated as one system and that it should not in any event be sold except as an entirety, and could not be otherwise sold without destroying the value of the property.

The parties to the mortgage knew that no title could be conveyed by a foreclosure in equity and a sale under a decree of forceclosure in equity by an officer appointed under such decree to property situate in States other than the State in which action was brought, and they therefore carefully provided that no sale should be made otherwise than by and under the authority of the grantee in the mortgage, who alone could convey a title, by virtue of the power contained in the mortgage, to property situate in other states, in order that the property might be sold as a whole and to the best advantage. This, certainly as far as the property situate in other states is concerned, was a valid agreement, and the mortgagors and their successors have a right to demand its execution.

The plaintiff in its bill, seems to have anticipated that the defendants might have some rights, under the power of sale provided for in the mortgage, to insist upon the observance of its conditions, for it alleges the appointment of receivers in the various states, of the property of the mortgagors situate therein, and the possession by such receivers, of the mortgaged property, and that in consequence it has been hindered and impeded in taking possession of the mortgaged property as provided by the mortgage, and in selling the same as in said mortgage required, and that it is impossible to execute the power of sale in the way and manner specified and provided in and by the mortgage.

These allegations in the complaint, except as to the appointment of receivers of the mortgagors' property, are denied in the answer and no proof seems to have been offered to show that the plaintiff

has made any effort whatever to take possession as required by the mortgage, and consequently the questions involved in this appeal must be disposed of as though there were no impediments in the way of the mortgagee taking possession of the property as required by the terms of the mortgage.

No purchaser at a sale under the decree in this action could ever be compelled to take title, because this court is powerless to enforce its own decree.

A purchaser at a foreclosure sale cannot be compelled to take title unless he can obtain possession upon the production of his deed, and if the court cannot put him into possession he will not be compelled to take. Recognizing this rule, the decree appealed from provides that the purchaser of the property sold be let into the possession, use and enjoyment thereof, and that all persons in possession thereof deliver the same to such purchaser on the production of the referee's deed or other proper evidence of the sale and purchase of said property. This provision of the decree the purchaser is entitled to have enforced, and how it can be made effective in respect to property in other States which it is admitted is in the possession of receivers appointed by the courts of those States, and over whom the courts of this State have not the slightest jurisdiction, has not been shown.

It would seem clear, therefore, that no sale can be had such as has been contemplated by this decree, and that the court should not decree any sale, as under such sale only the property in this State could be sold, which would almost destroy the value of the property mortgaged, it being possible, as far as appears from the evidence in the case, for the mortgagee to enforce his rights by a method not entailing such great disaster upon the security of the mortgage. It may be true that as far as the property in this State is concerned our statute regulates the method of foreclosure by advertisement, and the regulations therein provided must be complied with, but they may be fulfilled as well as the provision of the mortgage in respect to the method of foreclosure and sale, and if this course is pursued a good and perfect title may be given by the mortgagee to the purchaser upon a sale as to all the property mortgaged, whether situate in this State or in other States.

The use of the words " sale thereof  *  *  *  as may be decreed

by a court of competent jurisdiction" in no way militates against the views above expressed, as we have attempted to show that there is no court which can decree and enforce a sale of all the property mortgaged, and that it was for that reason, probably, that the parties agreed upon the power of sale inserted in the mortgage.

In view of the conclusion to which we have arrived in respect to the propriety of the decree appealed from, it may not be necessary to consider the remaining question as to whether or not the principal of the bonds has become due, but it may be best to briefly consider the question. The provision of the bond is that "In the event of non-payment of any interest coupons hereto attached, if such default shall continue for six months after maturity and demand of payment, the principal of this bond shall become due in the manner provided for in the said mortgage."

The mortgage provides that upon the happening of certain events that the mortgagee may enter and take possession of the mortgaged property and sell the same, and that in the event of such taking possession, or in the event of any such sale, then, and in either such case, the whole principal sum of each and all the bonds then outstanding and unpaid shall thereupon forthwith become due and payable. The bonds became due, therefore, upon the contingencies, viz.: either upon the taking possession of the property by the trustees or by a sale thereof, neither of which having taken place, the conditions have not been fulfilled, and the principal therefore is not yet due.

The judgment appealed from must be reversed and a new trial ordered, with costs to the appellants to abide the event.

Brady and Daniels, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.