OSCN Found Document:NICHOLS v. STATE ex. rel. DEPT. OF PUBLIC SAFETY

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 NICHOLS v. STATE ex. rel. DEPT. OF PUBLIC SAFETY
2017 OK 20
Case Number: 113890
Decided: 03/07/2017
As Corrected: March 9, 2017
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2017 OK 20, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 


 

NATHAN D. NICHOLS, JR., Plaintiff/Appellee,
v.
STATE OF OKLAHOMA, ex. rel., DEPARTMENT OF PUBLIC SAFETY, Defendant/Appellant.

CERTIORARI TO THE COURT OF CIVIL APPEALS,
DIVISION III

¶0 The plaintiff/appellee, Nathan D. Nichols, Jr. (Nichols/driver), appealed the suspension of his driver's license by the defendant/appellant, State of Oklahoma, ex. rel., Department of Public Safety (State/Department), in an administrative proceeding for driving under the influence (DUI). Nichols alleged that the Department's delay of a revocation hearing for a period of approximately sixteen (16) months from the initial notice of a request for a hearing until his cause was heard violated his right to a speedy trial guaranteed by the Okla. Const. art. 2, §6. The trial court agreed, setting aside the revocation order and reinstating Nichols' driving privileges. The Court of Civil Appeals reversed and the driver sought certiorari. Our decision in Pierce v. State, ex. rel., Dept. of Public Safety, (Pierce), 2014 OK 37, 327 P.3d 530 is determinative of some issues and instructive of others. We hold that the driver's right to a speedy hearing, guaranteed by the Okla. Const. art. 2, §6, was violated and we order reinstatement of Nichols' driving privileges. The number of similar causes pending in the courts makes it expedient to provide guidance to the Department and the public in considering the constitutionally guaranteed right of a speedy hearing in driver revocation proceedings. The parameters set forth will avoid unnecessary litigation and protect those using our streets and highways by timely revoking driving privileges from those who choose to operate vehicles while driving under the influence.

COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT AFFIRMED.

Matthew R. Tarvin, Claremore, Oklahoma, for Plaintiff/Appellee,
Mark E. Bright, Assistant General Counsel, DEPARTMENT OF PUBLIC SAFETY, Oklahoma City, Oklahoma, for Defendant/Appellant.


WATT, J.:
¶1 A delay of approximately sixteen (16) months occurred between the arrest of the plaintiff/appellee, Nathan D. Nichols, Jr. (Nichols/driver) for driving under the influence and the administrative hearing resulting in revocation of his driver's license. Certiorari was granted to address a single issue: whether the delay constituted a violation of the constitutional right to a speedy trial guaranteed by the Okla. Const. art. 2, §6.[1]
¶2 The driver lived under the cloud of a pending revocation proceeding for a period of sixteen (16) months. During twelve (12) months of this time period, the Department was in possession of evidence demonstrating that Nichols was driving under the influence at the time of his arrest. The arresting officer was available for virtually the entire twelve months to testify. Other than funding and personnel constraints, the Department presented no viable reason for the delay. Under these facts, we hold that the driver's right to a speedy hearing, guaranteed by the Okla. Const. art. 2, §6, was violated and we order reinstatement of his driving privileges.
¶3 The continued recurrence of this issue within the Department makes it expedient to set standards on the issue of the speedy resolution of matters where revocation is sought. To avoid the constitutional challenge presented in Pierce and here, the Department should follow the time frame established by paragraphs 28-30, infra,which will ensure timely hearings.
FACTS AND PROCEDURAL HISTORY
¶4 The facts surrounding the arrest and resulting blood test results are undisputed. Nichols was arrested on May 8, 2013, by Oklahoma Highway State Trooper J. Borden, for suspicion of driving under the influence. The driver submitted to a blood test. On May 20th, twelve days after his arrest, the driver requested an administrative hearing.
¶5 The Oklahoma State Bureau of Investigation (OSBI) released the results of the driver's blood test to the Department on September 6, 2013. The test demonstrated that Nichols was driving under the influence when arrested. The Department did not issue a notice of revocation to the driver until January 18, 2014, some four (4) months after receiving the OSBI's report. The revocation order was scheduled to take effect on February 17, 2014. On two occasions, January 18th and February 17th, the driver again filed requests for an administrative hearing.
¶6 On September 16, 2014, the Department held Nichols' administrative hearing on revocation of his license. This proceeding took place approximately eight (8) months after the Department issued its notice of revocation and following multiple hearing requests made by driver. On October 14, 2014, the driver received a copy of the administrative order sustaining the revocation of his driver's license.
¶7 The driver filed a timely appeal to the district court which heard the matter on December 16, 2014. Nichols did not dispute his arrest or the procedures or results of the tests and investigation. The driver did argue that his constitutional right to a speedy resolution of the cause, as guaranteed by the Okla. Const. art. 2, § 6, was denied. The trial court noted that the Department could have conducted a hearing at any time between September 11, 2013 and September 16, 2014. Relying primarily upon this Court's opinion in Pierce, supra.[2], the trial court sustained Nichols' appeal, reinstated his driving privileges, and exonerated his bond. On appeal, the Court of Civil Appeals reversed.
¶8 Nichols' petition for certiorari was filed on August 18, 2016. After requests for various extensions were filed by both parties, the answer thereto was filed on September 27, 2016 and the record received on January 3, 2017. On January 10, 2017, the cause was assigned to these chambers.
STANDARD OF REVIEW AND ANALYSIS
¶9 Pierce is determinative of the following two issues pertinent to this appeal: (1) standard of review, and (2) the factors used to determine whether the State has met its burden to provide a speedy trial. Just as there is no dispute as to the facts surrounding Nichols' arrest, neither party disputes the applicability of the legal principles established by Pierce. Rather, the disagreement arises as to whether these facts establish a violation of the driver's constitutional right to a speedy trial.
¶10 It is clear under Pierce, constitutional issues are reviewed de novo, requiring an independent, non-deferential re-examination of the Department's legal rulings. Pierce also established the controlling principles to use in determining whether the State has violated a driver's constitutional right to a speedy trial in a license revocation cause. In such proceedings, this Court considers: 1) the length of the delay; 2) the reason for the delay; 3) the party's assertion of the right; and 4) the prejudice to the party occasioned by the delay.[3] Finally, the opinion instructs that personnel and budgetary restraints are insufficient to excuse the government's constitutional duty to provide a timely right to be heard.
RIGHT TO SPEEDY TRIAL
¶11 The record demonstrates there was a sixteen (16) month delay between the driver's initial request for a hearing and the date of the administrative proceeding. Within four months of Nichols' request for a hearing, the OSBI had provided the Department with Nichols' lab test results from the night of his arrest. This evidence verified the driver was under the influence at the time he was detained. Without any sound explanation, the State delayed Nichols' administrative hearing for another twelve (12) months after receiving this evidence. Under these facts, this prolonged wait violated Nichols' right to a speedy trial as guaranteed by the Okla. Const. art. 2, §6.
¶12 The State has no sound basis for its delay. Nichols made his first request for a hearing on May 20, 2013. Nevertheless, the Department contends that the date for calculating the speedy trial issue should extend either from January 18, 2014 or February 17, 2014, when the second and third requests for a revocation hearing were made. The Department urges a speedy trial was provided to driver pointing to the length of time between the notice it provided and the hearing date. Nichols insists that the correct date from which to calculate his due process argument concerning his right to a speedy trial should extend from his first request for a hearing. We agree with the driver's contention. The State cannot artificially control the date from which the right to a speedy hearing will be calculated by delaying the issuance of a notice of revocation as it did with this driver.
¶13 In support of its argument, the State looks to Title 47, §754, subsection D.[4] The statute provides that when notified of the suspension of driving privileges, the "Department shall grant the person an opportunity to be heard if the request is received by the Department within fifteen (15) days after the notice." On appeal, relying on this statute, the State characterizes the driver's May, 2013, first request as "premature." It then argues, this untimely request can be disregarded and required no action or response by the State. The Department could simply treat this May, 2013 event as never having occurred and irrelevant for the purpose of calculating the time frame for a speedy trial.
¶14 In support of this position, the Department points to the transcript testimony as proof that throughout these proceedings, it has continually held to the position that Nichols' initial request was "premature" under §754(D). However, the cited transcript does not verify this contention. Rather, the material appears to be an offer of proof and admission by the State's attorney that May 20, 2013, is the proper date to be utilized in determining whether the State met its duty to provide timely notice and hearing to Nichols.
¶15 The Department cites to lines sixteen (16) and (17) on page 8 of the transcript. We find instructive lines eleven (11) through twenty-two (22) on the same page. They provide in pertinent part:


". . . THE COURT: . . . With that, DPS have any further evidence of any kind?
MR. BRIGHT: Your Honor, the only evidence that I would offer would be an offer of proof concerning the administrative hearing and the request that was made. We did receive a request from the Plaintiff in this matter on May 20, 2013, and the administrative hearing was held on September 16, 2014.
THE COURT: September what date?
MR. BRIGHT: September 16, 2014.
THE COURT: The request was on May 20, 2013?
MR. BRIGHT: Yes."
¶16 The above quotation makes it clear that, at the time of trial, the Department considered the May 20, 2013 request sufficient to put it on notice of the driver's desire for a hearing. It is also apparent that the Department's "premature notice" argument was not a theory advanced at the trial court; rather it was raised for the first time on appeal.
¶17 At trial, the State made the assertion that the date of the driver's notice was May 20, 2013. The statement is made as part of an "offer of proof." It has long been recognized that an attorney's statements during judicial proceedings may be considered admissions of fact.[5] Furthermore, generally, issues raised for the first time on appeal are not subject to review.[6]
¶18 Even taking judicial notice of the statute,[7] we find the statutory notice provision does not weigh against the driver in this cause. The arresting officer testified that he was available to appear at a hearing for almost the entire time period between Nichols' arrest and the actual hearing date. Thus, there was no evidence that the State's key witness had limited availability to be present at a hearing. Furthermore, the Department had the driver's blood test results by September 6, 2013, some four (4) months following the arrest. Despite having all the evidence necessary to make its case against the driver, the State waited until January of 2014, an additional four (4) months, before giving notice of revocation.
¶19 It is within the complete control of the Department, when or if, it issues a notice of revocation in a matter involving driving under the influence. Although the State has clear discretion with the timing of the revocation notice to a driver of a revocation hearing, it must be exercised in a manner that also protects the driver's constitutional right to a speedy hearing.[8] The State cannot simply point to this statutory authority as a means of excusing a violation of a driver's right to a speedy hearing.[9] It may not artificially control the date from which a speedy trial claim will be calculated, by delaying notice of revocation, where it is in possession of all evidence necessary to proceed with revocation proceedings.
¶20 There was a delay of sixteen (16) months between the driver's first request for a hearing and the date of the hearing. From the time the Department possessed Nichols' lab results, four months elapsed before the State issued its notice of revocation to Nichols. It then delayed yet another eight (8) months before the revocation proceeding was held. A total of twelve months elapsed from the date the Department had the necessary lab results and an actual hearing.
¶21 In Pierce, the Court was concerned with the fact that the State did not proceed with revocation proceedings for a period of between five (5) and eight (8) months while its witness was available. Inexplicably, the Department seems to find the fact that its witness was available virtually the entire sixteen (16) month period between Nichols' arrest and the hearing,[10] as a factor weighing in its favor on the speedy trial issue. Contrary to the State's argument, Nichols finds the same information as support that the State could have proceeded in a more timely manner. We agree with the driver.
¶22 The facts demonstrate that there was only a four (4) month time period in which the Department could have legitimately delayed the issuance of its notice of revocation, i.e., the time between when the OSBI provided Nichols' lab results and his first request for a hearing. In the order from the appeal of the administrative hearing, the trial court recognized that a hearing could have been held any time between September 11, 2013, when the Department received blood test results, and September of 2014.[11]
¶23 Alternatively, the State makes another argument it presented in Pierce. It asserts that the delay here was justified by budgetary and personnel matters hampering it from conducting Nichols' revocation hearing at an earlier date. A similar argument was found unconvincing in Pierce. It remains so here.
¶24 The Department is responsible for the scheduling of an administrative hearing and it must be held accountable for delays. All facts support the conclusion that from the time of his arrest, the driver took every imaginable step to ensure this matter could be resolved at the earliest possible date. The arresting officer was available at virtually all times. The Department had everything it needed to proceed once it received the blood tests in September, 2013.[12] In spite of this, it delayed issuing the notice of revocation until January, 2014 and it failed to conduct a hearing until September, 2014. The State unnecessarily delayed Nichols' proceeding for more than one year after it had the blood test results. 
¶25 The delay here weighs heavily against the governmental entity responsible for notice and scheduling the hearing.[13] Under the facts presented, the amount of elapsed time between the driver's first hearing request and the administrative hearing was unreasonable.
¶26 The Department argues that, because Nichols' driving privileges were not suspended, he did not suffer prejudice sufficient to raise a constitutional challenge. Nichols points to our decision in Pierce and he contends that he suffered similar losses to those found viable in Pierce to support a constitutional challenge. We agree that under the facts presented, the potential loss of a property interest will meet this prong of the four-part test of deprivation of the right to a speedy trial. Nichols was prejudiced simply because the state of his driving privileges remained in limbo for sixteen (16) months.
¶27 The delay here was not as egregious as that experienced in Pierce. Nevertheless, Nichols was under the cloud of suspension for a minimum of four (4) months longer than was strictly necessary while the Department was in possession of blood test results and for sixteen (16) months from the time he gave notice of his desire to be heard. The failure to hold a timely hearing of revocation most certainly contravened the Legislature's intent that these matters be handled in a timely manner along with the public's interest in keeping impaired drivers off the streets and highways.
DIRECTIVES FOR NOTICE AND HEARING
¶28 There is no question that the issue of whether revocation proceedings are taking place in a timely manner is one of increasing concern. At least three Court of Civil Appeals cases have addressed the issue.[14] It is also impossible for strict rules to exist which will govern the issue in all causes, as facts will vary largely. Nevertheless, we find it necessary to give some guidance to the Department to assist it in determining a time frame in which it can avoid being subject to claims of violating the constitutional right to a speedy jury trial.
¶29 The Department should give notice of revocation in a timely manner. Notice should be given within ten (10) days after receipt of blood tests when the arresting officer will be available to testify. If the officer is not able to appear when test results are received, notice should be given immediately upon the officer being made available to testify. Thereafter, if the driver requests a hearing, the proceeding should be held within sixty (60) days of the Department's receipt of notice. Where these time frames are followed, the delay, absent extenuating circumstances, should not be found to weigh against the Department.
¶30 The parameters outlined will protect the right to a timely hearing in revocation proceedings. Ultimately, they will ensure what driving under the influence laws are intended to do. They will remove those choosing to drive impaired off our city streets and state highways in a timely manner. Neither the driver here nor the operator in Pierce suffered actual suspensions when facts indicate revocations would have occurred had constitutional violations not been in play. Most likely, both drivers would have suffered suspension of driving privileges if revocation proceedings had taken place expeditiously.
CONCLUSION
¶31 Applying the factors to be considered in assertions of the constitutionally guaranteed right to a speedy hearing in revocation proceedings, we determine that Nichols suffered such a deprivation. Nichols waited sixteen (16) months between the time he asserted his right to a timely hearing until proceedings were conducted. The Department could have conducted a revocation hearing as soon as four (4) months following Nichols' arrest. All delays here were the responsibility of the Department. Undoubtedly, Nichols suffered some prejudice arising from the uncertainty of whether he would lose his right to drive through suspension or revocation.

COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT AFFIRMED

Combs, C.J., Gurich, V.C.J., Watt, Edmondson, Colbert and Reif, JJ. - concur
Winchester, J., concurs by reason of stare decisis;
Kauger, J. - concurs in result;
Wyrick, J. - not present and not participating

FOOTNOTES

[1] The Okla. Const. art. 2, §6 provides:
"The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation, and right and justice shall be administered without sale, denial, delay or prejudice."
Although the United States Const. does not have a constitutional provision identical to art. 2, §6, the Sixth Amendment guarantees the right to a speedy and public trial, providing in pertinent part:
"In criminal proceedings, the accused shall enjoy the right to a speedy and public trial . . .".

[2] Pierce, 2014 OK 37, ¶7-8, 327 P.3d 530, 533.

[3] Id.

[4] 47 O.S. 2011, § 754(D) provides in pertinent part:
"Upon the written request of a person whose driving privilege has been revoked or denied by notice given in accordance with this section or Section 2-116 of this title, the Department shall grant the person an opportunity to be heard if the request is received by the Department within fifteen (15) days after notice. . . ."

[5] Wester v. Lucas, 1936 OK 337, ¶ 0, 57 P.2d 1179; Mid-Co Gasoline Co. v. Back, 1923 OK 583, ¶ 0, 217 P.1041.

[6] Dept. of Securities ex rel. Faught v. Wilcox, 2011 OK 82, ¶17, 267 P.3d 106, 110; Jernigan v. Jernigan, 2006 OK 22, ¶ 26, 138 P.3d 539, 548.

[7] Title 12 O.S.2011, § 2201(A) provides:
"Judicial notice shall be taken by the court of the common law, constitutions and public statutes in force in every state, territory and jurisdiction of the United States."
Title 12 O.S.2011, § 2203 C provides:
"Judicial notice may be taken at any stage of the proceeding."

[8] When the Oklahoma Constitution does not contravene its federal counterpart, it is the supreme law and final authority. Bosh v. Cherokee County Bldg. Auth., 2013 OK 9, fn. 42, 305 P.3d 994; Turner v. City of Lawton, 1986 OK 51, ¶ 10, 733 P.2d 375, 378-379. It takes precedence over the statutory scheme. See, Muskogee Indus. Dev. Co. v. Ayres, 1916 OK 125, 154 P. 1170. See also, State v. Barnett, 60 Okla.Crim. 355, 69 P.2d 77 (1936).

[9] Id. See, note 10.

[10] Transcript of Proceedings, December 16, 2014, Trooper Kyle Borden testifying in pertinent part at p. 7:


". . . Q. Trooper, at any time between May of 2013 and around September 25th of 2014, were you deployed or out of the country for any reason or, in any way, unavailable for a hearing?
. . . A. The only time I remember notifying DPS that I was not available is when I called the day before I was supposed to testify that I did not receive notice of. I was on my way to Nebraska.
Q. And that was actually the last part of November?
A. That was in November.
Q. Okay. But at no time before that, from the date of the arrest until the administrative hearing where you did testify?
A. Not that I recall. . . ."

[11] Page 2 of the trial court's order, pp. 1-2 provides in pertinent part:
". . . In this case the Department had a period from approximately September 11, 2013 to September 16, 2014 that the hearing could have been conducted. . . ."

[12] The availability of the officer for a month before scheduling the revocation hearing, once he returned from overseas duty, was considered unreasonable in Pierce.

[13] Pierce, 2014 OK 37, ¶15, 327 P.3d 530, 534-535; Ellis v. State, 2003 OK CR 18, ¶ 47, 76 P.3d 1131, 1139.

[14] See, Fernandez v. State, 2016 OK CIV APP 82, ___ P.3d ___ (Hearing fourteen months after first request to be heard found to violate speedy hearing constitutional provisions.); Ryan v. Commissioner of the Dept. of Public Safety, 2016 OK CIV APP 49, 377 P.3d 1255 (Delay of between ten and fourteen months violated constitutional right to speedy hearing.). See also, Macey v. State of Oklahoma ex rel. Dept. of Public Safety, No. 111,420 (Companion to Case Nos. 111,418 and 111,419), unpublished Court of Civil Appeals opinion remanding cause to the trial court for the application of Pierce factors where delay of hearing was eleven months from the date of a request for hearing.




 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 2003 OK CR 18, 76 P.3d 1131, ELLIS v. STATE
Discussed
 1936 OK CR 127, 69 P.2d 77, 60 Okl.Cr. 355, Oklahoma v Barnett
Cited
Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2016 OK CIV APP 49, 377 P.3d 1255, RYAN v. COMMISSIONER OF THE DEPT. OF PUBLIC SAFETY
Discussed
 2016 OK CIV APP 82, FERNANDEZ v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Cited
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1986 OK 51, 733 P.2d 375, 57 OBJ 1904, Turner v. City of Lawton
Discussed
 1936 OK 337, 57 P.2d 1179, 177 Okla. 147, WESTER v. LUCAS
Discussed
 1916 OK 125, 154 P. 1170, 55 Okla. 152, MUSKOGEE INDUS. DEV. CO. v. AYRES
Discussed
 1923 OK 583, 217 P. 1041, 95 Okla. 29, MID-CO CASOLINE CO. v. BACK
Cited
 2006 OK 22, 138 P.3d 539, JERNIGAN v. JERNIGAN
Discussed
 2011 OK 82, 267 P.3d 106, DEPT. OF SECURITIES ex rel. FAUGHT v. WILCOX
Discussed
 2013 OK 9, 305 P.3d 994, BOSH v. CHEROKEE COUNTY GOVERNMENTAL BUILDING AUTHORITY
Discussed
 2014 OK 37, 327 P.3d 530, PIERCE v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed at Length
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2201, Judicial Notice of Law
Cited
 12 O.S. 2203, Determining Propriety of Taking Judicial Notice
Cited
Title 47. Motor Vehicles
 Cite
Name
Level

 47 O.S. 754, Surrender or Seizure of License - Receipt as Temporary License - Revocation or Denial of Driving Privilege - Hearing
Cited